DECISION. *Page 2 
{¶ 1} Following the entry of a no-contest plea, the trial court convicted defendant-appellant James Gunn of possession of cocaine in violation of R.C. 2925.11(A). Gunn was sentenced to seven months' imprisonment. Bringing forth six assignments of error, Gunn now appeals his conviction, arguing that the trial court erred by denying his motion to suppress the cocaine found on his person after he was improperly detained by the police, and by denying his motion to dismiss the charges against him.
 {¶ 2} Because Gunn's consent to search his person was not given voluntarily under the totality of the circumstances, we hold that the cocaine found as the result of the illegal search should have been suppressed. For this reason only, we reverse the judgment of the trial court and remand the case for further proceedings.
 {¶ 3} At the suppression hearing, Cincinnati police officer Adam Hennie, assigned to the Central Vice Control Section ("CVCS"), testified that on June 5, 2006, he detained Gunn after receiving a dispatch that a confidential informant had just made a controlled drug purchase from "a male black with a black do-rag type style and a white T-shirt, that was standing [at the corner of Westwood and Salem Avenues]," a known drug-trafficking area. Hennie testified that he and his partner had responded to that area, where he observed Gunn standing, wearing a white T-shirt and a black do-rag. Officer Hennie approached Gunn, ordered him to his knees, handcuffed him, and read him the Miranda warnings. At that point, Officer Hennie testified, he learned that Gunn was not the actual suspect; instead, the suspect was inside a nearby convenience store. After receiving this information, and *Page 3 
while Gunn was still handcuffed, but standing, Hennie asked Gunn for his consent to search him. Hennie testified that Gunn said, "Yes." Gunn testified that he did not answer Hennie, because he thought Hennie was going to search him regardless of how he responded. Hennie searched Gunn and found .87 grams of crack cocaine in a cigarette pack in the front pocket of Gunn's pants.
 {¶ 4} The trial court concluded that Gunn had consented to the search and denied the motion to suppress.
 {¶ 5} In his appeal, Gunn raises six assignments of error. For purposes of our decision, we first address Gunn's third assignment of error. In his third assignment, Gunn maintains that the trial court erred by denying his motion to suppress the cocaine found in his pants' pocket because his consent to the search was involuntary under the totality of the circumstances. We agree.
 {¶ 6} At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility.[1] Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[2] Accepting those facts as true, we must then independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.[3]
 {¶ 7} Police officers do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily *Page 4 
consents to the search.[4] But the state does have the burden of showing, by "clear and positive" evidence, that consent was freely and voluntarily given.[5] The state did not sustain this burden here. After reviewing the record, we hold that the evidence did not support the trial court's conclusion that Gunn had voluntarily consented to a search of his person.
 {¶ 8} Gunn maintains that if he consented, such consent was clearly given during an illegal detention and, thus, that the consent was invalid because he did not reasonably believe that he could refuse the officer's request and leave the scene.
 {¶ 9} In the context of a lawful detention, voluntariness is judged by the totality of the circumstances, and it need not be proved that the defendant in fact knew that he had the right to refuse his consent.[6]
But when a defendant consents while being unlawfully detained in violation of the Fourth Amendment, courts apply a different test to judge the validity of the consent. In such situations, consent is presumed in law to be tainted and is held to be invalid unless the state proves that it was not "the product of the illegal detention, [but was rather the] result of an independent act of free will."[7] The Ohio Supreme Court has held that consent is the result of an independent act of free will when the totality of the circumstances clearly demonstrates that a reasonable person would have believed that he had the freedom to refuse to answer further questions and could in fact leave the scene.[8] *Page 5 
 {¶ 10} After reviewing the record, we hold that Gunn had been illegally detained at the time he gave his consent. The Ohio Supreme Court has held that "when a police officer's objective justification to continue detention of a person stopped * * * for the purpose of searching [that person] is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."[9] Regardless of whether Gunn had been properly stopped based on the confidential informant's tip, the moment that Officer Hennie learned that Gunn was not the suspect, the reason for detaining Gunn dissipated, and Gunn should have been free to leave unless there were some reasonable, articulable facts giving rise to a suspicion of illegal activity. Here, there were no such facts presented by the state. Officer Hennie testified that he had initially stopped Gunn because he matched the description of the suspect and because Gunn was in the area where the drug purchase had allegedly occurred. He did not testify to any other behavior that would have led him to suspect that Gunn had been involved in illegal activity. Thus, Gunn's detention became illegal when he was kept handcuffed and on his knees, after the police had learned that Gunn was not the suspect.
 {¶ 11} Because Gunn consented to the search while he was illegally detained, his consent, as a matter of law, was tainted unless, under the totality of the circumstances, a reasonable person in Gunn's position would have believed that he was free to refuse to answer further questions and in fact free to leave the scene. Given that Gunn was in handcuffs and on his knees, we hold that a reasonable *Page 6 
person in Gunn's position would not have in fact been free to leave the scene and would not have believed that he was free to refuse consent. Although the state argues that Gunn knew he was free to leave because he overheard the dispatch on the police radio that he was not the suspect, there is nothing in the record to support this argument. It is unclear how Officer Hennie learned that Gunn was not the suspect, and even if that information was broadcast over the police radio, there is no evidence in the record demonstrating that Gunn overheard that information. Accordingly, based on the foregoing, Gunn's consent was involuntary. As a result, the search of Gunn's person violated the Fourth Amendment, and the trial court therefore should have granted Gunn's motion to suppress the cocaine. The third assignment of error is sustained.
 {¶ 12} Gunn has raised four other assignments of error contesting the trial court's denial of his motion to suppress. Although those assignments may each provide a separate basis for reversing the trial court's judgment, we do not address them, as they are now moot given our resolution of the third assignment of error.
 {¶ 13} In Gunn's sixth and final assignment of error, he contends that the trial court erred in denying his motion to dismiss the charges against him, when the police had failed to tape-record the request to search Gunn and his response, as required by the Cincinnati Police Procedure Manual. Gunn argues that this failure to record the request to search violated his due-process rights. We overrule this assignment of error, because there is no constitutional duty to record a defendant's consent to search on audio or video tape,[10] and because any such due-process violation would not have justified a dismissal of the charges. *Page 7 
 {¶ 14} In sum, because we have sustained Gunn's third assignment of error, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this decision and the law.
PAINTER, P.J., and HENDON, J., concur.
[1] See State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141.
[2] See State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726.
[3] See Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657;State v. Klein (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141.
[4] State v. Riggings, 1st Dist. No. C-030626,2004-Ohio-4247, at ¶ 11, citing Schneckloth v. Bustamonte (1973),412 U.S. 218, 219, 93 S.Ct. 2041; State v. Comen (1990), 50 Ohio St.3d 206,211, 553 N.E.2d 640.
[5] Bumper v. North Carolina (1968), 391 U.S. 543, 548, 88 S.Ct. 1788;State v. Posey (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61.
[6] See Schneckloth, supra.
[7] Florida v. Royer (1983), 460 U.S. 491, 501, 103 S.Ct. 1319; see, also, State v. Robinette, 80 Ohio St.3d 234, 1997-Ohio-343,685 N.E.2d 762, paragraph three of the syllabus; State v. Black (Dec. 31, 1998), 1st Dist. No. C-970874.
[8] Robinette, supra; see, also, State v. Smith, 1st
Dist. No. C-061032, 2007-Ohio-3786, at ¶ 13.
[9] Robinette, supra, at paragraph one of the syllabus.
[10] See State v. Sneed, 4th Dist. No. 06CA18,2007-Ohio-853, at ¶ 23. *Page 1