OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Defendant-Appellant, Justan J. Numbers, appeals the judgment of the Lima Municipal Court denying his motion to suppress evidence. On appeal, Numbers argues that the trial court erred in denying his motion to suppress because the police lacked probable cause to stop his vehicle. Finding that the police possessed probable cause to stop his vehicle, we affirm the judgment of the trial court.
 {¶ 3} In October 2006, Numbers was arrested and cited for one count of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d), a misdemeanor of the first degree, and one count of failure to illuminate a rear license plate in violation of R.C. 4513.05, a minor misdemeanor. A breath analysis test conducted at the police station *Page 3 
established that Numbers' breath alcohol concentration was in excess of the legal limit of .08 grams of alcohol per 210 liters of breath.
 {¶ 4} In December 2006, Numbers entered a plea of not guilty to both counts in the citation.
 {¶ 5} In January 2007, Numbers moved to suppress evidence obtained from the stop, arguing that the arresting trooper had no probable cause or reasonable suspicion to conduct the stop.
 {¶ 6} In February 2007, the trial court held a hearing on the motion to suppress evidence, during which the following testimony was heard.
 {¶ 7} Trooper Kinsinger of the Lima State Patrol Post was questioned about Numbers' vehicle and testified as follows:
 Q: All right, now what drew you [sic] attention to [Numbers' vehicle]? * * *
 [Trooper Kinsinger]: * * * I observed the license plate light [sic] not working and it was awfully dirty.
 * * *
 Q: What did you observe about [Numbers' vehicle]? [Trooper Kinsinger]: The vehicle, the license plate was not visible[.]
 Q: Did it have any illumination whatsoever to your knowledge or to your [sic]?
 [Trooper Kinsinger]: Not to my knowledge, it was awfully dirty, I noticed that.
 * * *
 Q: * * * Could you read any numbers when it passed? As it passed you?
 [Trooper Kinsinger]: No, that's what drew it to my attention, by the time I turned around, now as I got closer I could barely read it, read the plate. *Page 4 
 Q: When you were right on top of it, could you read the plate then?
 [Trooper Kinsinger]: It was awfully difficult to read.
 * * *
 Q: Okay, and also in addition to that though [sic] you didn't notice the light on it? [Trooper Kinsinger]: Correct[.]
 * * *
 Q: * * * Can you swear today in this courtroom whether that light bulb was working or not?
 [Trooper Kinsinger]: I can swear today that it was either dirty or it was not working, one of them [sic] two, correct.
 * * *
 Q: Did you tell [Numbers] that you stopped him for a dirty plate or a failure to illuminate?
 [Trooper Kinsinger]: I advised both, it was not illuminated and it was dirty.
(Suppression Hearing Tr., pp. 3-8).
 {¶ 8} Further, Trooper Kinsinger testified that the stop was recorded by video; however, the alleged violation cannot be observed by viewing the videotape because he did not turn off his headlights.
 {¶ 9} Numbers testified that, prior to being stopped, he observed the plate and it was readable and properly illuminated; that, after being stopped and released, he observed that the rear license plate light was working; that, while in the trooper's vehicle, he was able to observe the license plate on his own vehicle and that "there wasn't [sic] gobs of mud on it or anything" (suppression hearing tr., p. 10); and, that Trooper Kinsinger informed him that he stopped him "because [he] had a dirty license plate." (Suppression Hearing Tr., p. 10). *Page 5 
 {¶ 10} In March 2007, the trial court overruled Numbers' motion to suppress, stating, in pertinent part:
 The officer testified when he looked at the vehicle, "the license plate was not visible", and "it was awfully dirty."
 The Defendant testified that the light did in fact work.
 The Court finds that the facts justified the officer's stopping the Defendant. Whether or not the rear registration light illuminated the plate with a white light that rendered it visible from a distance of fifty feet to the rear remains to be determined.
 The law is well settled that a possible violation of O.R.C. 4513.05 warrants an investigatory stop of the vehicle. The officer had sufficient probable cause to initiate a stop of the Defendants [sic] vehicle.
(March 2007 Judgment Entry, p. 1).
 {¶ 11} In May 2007, Numbers withdrew his not guilty plea and entered a negotiated plea of no contest to operating a vehicle while under the influence of alcohol. The failure to illuminate a rear license plate count was dismissed pursuant to negotiations. Subsequently, the trial court convicted Numbers, sentenced him to ninety days in jail, and ordered him to pay a fine of $300.
 {¶ 12} It is from the trial court's judgment of conviction that Numbers appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS AND FOUND THAT THE OFFICER HAD SUFFICIENT PROBABLE CAUSE TO COMMENCE AN INVESTIGATORY STOP OF DEFENDANT-APPELLANT'S VEHICLE. *Page 6 
 {¶ 13} In his sole assignment of error, Numbers asserts that the trial court erred when it denied his pre-trial motion to suppress and found that the officer had sufficient probable cause to commence an investigatory stop of his vehicle.[1] Specifically, Numbers argues that the statute on which the trooper justified the stop does not prohibit dirty license plates; that the trooper did not testify to specific, articulable facts demonstrating that the plate was not functional; and, that the trooper acted contrary to common procedure by failing to document the alleged obstruction with his video camera. We disagree.
 {¶ 14} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing United States v.Martinez (11th Circ. 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, at ¶ 100, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. The appellate court must then *Page 7 
review the application of the law to the facts de novo.Roberts, supra, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 {¶ 15} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of such evidence is an essential element of the Fourth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 649. The main rationale of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police officers from unlawful conduct. State v. Jones, 88 Ohio St.3d 430, 435, 2000-Ohio-374, abrogated by State v. Brown, 99 Ohio St.3d 323, 2003-Ohio-3931.
 {¶ 16} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, Xenia v. Wallace (1988),37 Ohio St.3d 216, paragraph two of the syllabus; State v. Kessler (1978),53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. Maumee v. Weisner, *Page 8 87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).
 {¶ 17} R.C. 4513.05 governs tail lights and illumination of rear license plates and reads, in pertinent part:
 Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.
R.C. 4513.05(A).
 {¶ 18} R.C. 4503.21 governs display of license plates and reads, in pertinent part:
 No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark[.] * * * All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility.
R.C. 4503.21(A).
 {¶ 19} The Supreme Court of Ohio has held that "`[s]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. * * * [It is] irrelevant whether the stop in question is sufficiently *Page 9 
ordinary or routine according to the general practice of the police department or the particular officer making the stop.'" Dayton v.Erickson, 76 Ohio St.3d 3, 9-10, 1996-Ohio-431, quoting U.S. v.Ferguson (C.A.6, 1993), 8 F.3d 385, 391. Therefore, "[e]ven a de minimis violation of the law provides a basis for a seizure by law enforcement officials." State v. Bowie, 4th Dist. No. 01CA34, 2002-Ohio-3553, ¶ 12, citing Whren v. United States (1996), 517 U.S. 806, andErickson, supra; see, also, State v. Phillips, 3d Dist. No. 8-04-25,2006-Ohio-6338, ¶¶ 64-65.
 {¶ 20} Here, Trooper Kinsinger testified that the license plate on Numbers' vehicle was "awfully dirty" and, thus, was "not visible." Additionally, he testified that the rear license plate light bulb was "either dirty or it was not working." This testimony demonstrates that the officer possessed specific, articulable facts suggesting that Numbers had violated both R.C. 4513.05(A) and 4503.21(A). Therefore, competent, credible evidence existed supporting the trial court's finding that the trooper had probable cause to stop Numbers.
 {¶ 21} Additionally, although Numbers' testimony contradicted Trooper Kinsinger's testimony, it is well-established that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the trier of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. *Page 10 
 {¶ 22} Finally, although Numbers argues that the trooper acted contrary to common procedure by failing to document the alleged obstruction with his video camera, there is no constitutional duty to document such an obstruction and Numbers did not allege any bad faith by Trooper Kinsinger. See State v. Sneed, 4th Dist. No. 06CA18,2007-Ohio-853, ¶¶ 23-24; State v. Gunn, 1st Dist. No. C-070016,2007-Ohio-6874, ¶ 13; State v. Wooten, 4th Dist. No. 01CA31, 2002-Ohio-1466.
 {¶ 23} Accordingly, we overrule Numbers' assignment of error.
 {¶ 24} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and PRESTON, J., concur. r
[1] We note that, although Numbers refers to probable cause to commence an investigatory stop of a vehicle, reasonable articulable suspicion is the appropriate standard applicable to an investigatory stop. See Delaware v. Prouse (1979), 440 U.S. 648; Terry v. Ohio (1968),392 U.S. 1. Here, however, the trial court found that Trooper Kinsinger was able to initiate the stop based on the heightened standard of probable cause. *Page 1